Good morning. May it please the Court, Aaron Wiener on behalf of Appellants Arthur Gerrans, James Crowley, and Nicholas Rubino, I'd like to reserve four minutes for rebuttal. Appellants in this case are entitled to qualified immunity because it was not clearly established in 1990, 1991, that a parent's wrongful conviction could violate the 14th Amendment familial association rights of their children. And it was not until at least 2001, in this Court's decision in Lee v. City of Los Angeles, that this Court first addressed whether that right exists. Here, the District Court incorrectly denied qualified immunity for two principal reasons. First, the District Court presumed that sufficient allegations that Joaquin's constitutional rights had been violated automatically meant that Pedro's separate 14th Amendment rights were clearly established. However, the fact that a parent or child's constitutional right is clearly established does not mean that another's familial association right is automatically clearly established for qualified immunity purposes, as shown most recently in this Court's decision in Scott v. Smith. Second, because the District Court presumed that Pedro's asserted right was clearly established, it did not look to the state of the law at the time of the conduct at issue. This analysis would have revealed that Smith v. City of Fontana, the only Ninth Circuit case that Pedro relies on, dealt with a child's claim of unwarranted interference with familial association in the context of an excessive force case, and did not concern the factual context of a wrongful conviction case, which we have here. Why, I mean, those are different contexts, but why does the difference matter here? I mean, if it's clear that you can't interfere, I mean, if there's a right to familial association that you can't interfere with by the use of physical violence against one party, why doesn't, you know, incarcerating one of the parties for many years, it doesn't seem like that big of a stretch, that the prohibition on one would clearly establish the prohibition on the other? I think that the response to that question is that when conducting a qualified immunity analysis, the analysis starts first with defining what the right at issue is. As Your Honor pointed out in the previous argument, those rights are not to be defined at high levels of generality. So to say that there's a right to be free from unwarranted interference with familial association at a general level, no matter what the factual context is, doesn't supply the required level of specificity to put an officer on notice that their conduct could subject them to liability for the particular right at issue in the case. So much in the same way as saying that a claimant has a right to be free from excessive force doesn't provide the required notice to an officer in all factual contexts that their conduct could violate the constitutional rights of the plaintiff. Saying that a plaintiff has the right to be free from unwarranted interference with familial association in all contexts, whether it be excessive force, whether it be in the wrongful conviction context, doesn't supply the necessary factual specificity. So when, in your view, did the right and the wrongful conviction context become clearly established? It became clearly established in the Ninth Circuit at least as early as 2001 in this court's Levy City of Los Angeles case. There's no case that predates that 2001 case, which is a decade after the conduct at issue in this case, that dealt with the factual scenario of a child or a parent suing based on the alleged wrongful conviction of the other. There's a district court case that did address that, but it was also almost a decade after the conduct at issue here. District court cases wouldn't in this context provide a source of clearly established rights, but even so, there was one case, and that was in 2000, which is still well after the conduct at issue in this case. But you want us to just say that Smith was a different context? Smith, I think there's a couple of them. Smith v. City of Fontana, Judge Miller's raised. Right. I think there's two principal issues that we raise with respect to Smith v. City of Fontana. First is that it did deal with a separate factual context, being that it dealt with an excessive force case. But there's also a problem with relying on Smith as a source of clearly established law, because shortly after it was decided, the core holding in Smith was overruled by the Supreme Court's decision in Graham v. Conner. So to the extent that Smith did establish, essentially after the Supreme Court's holding in Graham v. Conner, the only part of Smith that remained as good law is its expansion of the claim to allow children to assert this right. Before Smith, it was the law of the land that only parents could sue for unwarranted interference with familial association based on a deprivation of that association with their child. Smith expanded that to allow children. So to the extent that an officer in 1990 is looking to Smith, they're not looking to it as a source of excessive force standards. If it can't be relied on for its core holding, then it doesn't provide the necessary specificity for a clearly established right. Even though it dealt with deprivation of the associational connection with the parent? It did deal with that deprivation, but again, the issue in a qualified immunity analysis is it starts with defining what the right is. If we're to say that there is this right to unwarranted interference with familial association, that's just simply too broad of a definition to provide any type of notice to an officer that in a specific factual context that their conduct could subject them to liability. I'd also like to point out to the court that because Smith v. City of Fontana did not provide the necessary specificity to be a source of clearly established law in this context, and due to the fact that the Supreme Court even today has not addressed this specific right, an officer standing in the shoes of the appellants here would look to law outside of the Ninth Circuit. As we pointed out in our brief, a majority of circuits today have ruled that conduct that incidentally affects the familial association does not give rise to a claim. At least one of those cases that we cited was decided before the conduct at issue in this case, and at least one other circuit decided that was the case before this court decided Lee v. City of Los Angeles. So what's the relevance of that? So just abstracting from the specific law here, but hypothetically if we have circuit law that clearly establishes a particular right and then a bunch of other circuits have rejected that, is it clearly established within the circuit? I mean, my understanding was that the Supreme Court has sort of reserved that question, but I thought we followed the rule that in that situation it would be clearly established. Is that right? Yes, Your Honor. But I think that the issue is that as of the time of the conduct in this case in the Ninth So if it has only ever been at the time of the conduct defined at a very high level of generality, it's appropriate to look at what's the state of the law in other circuits to see is this constitutional question beyond debate. So on the one hand, we have the Ninth Circuit's decision saying at a very high level of generality that this right in the abstract does exist. Other courts saying that it doesn't. That's the prototypical example where a court should grant qualified immunity to an officer because the issue is not beyond debate. And so I'd like to go back to the district court's error here and start with principally what the issue is, is that the district court relied on this Ninth Circuit case of Mellon v. Winn to find that two claims, when brought by a parent and a relative in the context of a familial association, necessarily succeed or don't succeed together. The problem with that approach is that it doesn't adhere to the principle that constitutional rights are personal rights. And because they're personal, they must be analyzed independently of any other right in the case. And so for the district court to look at, well, was there some violation of Joaquin's rights, and if there are sufficient allegations that his rights have been violated, then necessarily every other right at issue in the case, no matter what, regardless of what the state of the law is at that time, as of now, must necessarily succeed. That's erroneous because, again, it doesn't look at whether the law was clearly established with respect to the specific right at issue. And just to be clear, but on the converse of that, I take it your position is that if Joaquin's claims fail, then Pedro's claims necessarily fail? You're just saying that if Joaquin's claims succeed, that doesn't necessarily mean that Pedro's claims succeed. Is that right? That's correct. And I think that's principally the basis on which Pedro has misread the Mellon v. Wynn decision in which the district court adopted. Certainly, if there's no constitutional violation underlying the child's claim that their familial association rights were violated, then there is no violation of their rights. So if the parent's rights were not violated, necessarily the child's rights must fail. The inverse is not necessarily true. And that was borne out most recently in this Court's decision in Scott v. Smith, where the Court first analyzed whether the parent's right to be free from excessive force by use of excessive body weight compression leading to his death was excessive. The Court found that it was. And so there was that primary underlying constitutional violation. The Court then separately analyzed whether that conduct could give rise to a familial association claim brought by the relatives of the decedent. The Court found that it could, based on the then-current state of the law, but found that at the time of the conduct, the right at issue was not clearly established, which is a nearly identical circumstance that this Court is confronted with. We are conceding that within the Ninth Circuit, the right is clearly established now, but it was not at the time of the conduct. Okay. Do you want to reserve some time? We'll reserve the remainder of my time. Thank you. Good morning. Is it Mr. Timor? Timor, yes, Your Honor. May it please the Court, my name is Richard Timor. I represent Pedro, Syria, in this matter, who is the son of Joaquin, the previous case that the Court heard. Pedro, his entire relationship with his father for the last 32 years has consisted of prison visits, and so the issue for the Court to determine in Pedro's case is whether or not there was a clearly established—I'm sorry, let me—so starting in Smith v. City of Fontana, that's in 1987, the Ninth Circuit established that a child has an interest in the society and companionship of his father, and it further determined that unwarranted state interference with that interest violates substantive due process. So that's a 1987 case. The cases that followed that, including the cases that the defense has cited, starting with Ovando, which is the 2000 case that he cited, and then Lee v. City of Los Angeles again cited the Smith case for the proposition that constitutional, quote, interest in familial compassionship and society logically extends to protect children from unwarranted state interference with the relationship of the parents. And there are cases cited within Lee that reach back to 1987 before the activity in this case that established that right. And while we're on Lee, starting at page 34 of our brief, even assuming that the defendant's appellants are right, that Pedro's claims were not clearly established until 2001, we also have a claim for wrongful incarceration, which continued from 2000 and 2001 through April 2022, which is when he was eventually released. Now, how that would play out in the district court in terms of proof and damages, I don't know. I haven't thought that through. But certainly for at least 22 years, the right was clearly established for Pedro at that time. But what conduct did these defendants engage in during those? I mean, their conduct was pretty much done, I thought, at the time of the conviction. Right? So what did they — if we were to say that the right only became clearly established in 2001 or that — what did they do after 2001 that they should be liable for? Well, they continued to keep him in custody. That's the issue. They continued to keep him in custody. But not these defendants. I thought that the only defendants are the officers, right? So it's, you know, the warden or somebody else was keeping him in custody. These officers weren't, were they? But my response to that, Your Honor, is that it's continuing conduct and it's conduct that is necessarily related to the original conduct of the officers. So while the officers didn't do anything after 2000, certainly the effects of what they did in 1991 continued after 2000. And so at that — But for purposes of qualified immunity, we're looking at what they did and what the right was. Well, that's correct, Your Honor. But again, in 2000, I guess it's more of an omission at that point in that the officers didn't do anything when that right was clearly established, and I didn't brief that particular issue. But again, as of 2000, there was harm that Pedro suffered, and it was due to — it was due to — the genesis of it was from these defendants. The last — well, two other things. I did want to address briefly about the Mellon case. The Mellon case is almost exactly on point with our case. I think that the district court rightfully cited that case and relied on it. I don't think that the defendants' appellants' distinctions are — make a difference in this case with respect to that. And do you agree that under Mellon, in order for you to win, we need to conclude that there was a violation of Joaquin's 14th Amendment rights? Oh, yes. That's a necessary element. Oh, yes. I agree with that 100 percent, Your Honor. To a certain extent, Pedro's rights are derivative of whatever constitutional violations that his father suffered. I agree with that. That's the law. Ultimately, that's a jury question. Ultimately, that's a jury question. Of course it is. It's a jury question as to whether or not there was harm suffered by Pedro at the time. And so you asked the defendants earlier whether or not if Joaquin's claim fails, Pedro's claims fail. That's correct. But just because they succeed doesn't necessarily mean — and I agree with that, that Pedro wins. That is a factual issue that we would have to prove up to the court, to a jury. I agree with that. And then the last point I want to make — I'm not going to use up all my time — is that I do think that the law in this circuit is clear with Smith and Lee that there is a right that is clearly established at the time of the violations in this case. Does the Court have any other questions for me? It appears not. Thank you.  I'd like to briefly address the argument raised by my opposing counsel here with respect to the officer's obligations after this Court issued its decision in Levy City of Los Angeles in 2001. There's no case that I'm aware of, and there's certainly no case that's cited in the case law after a conviction is rendered and then takes some unspecified action to supposedly correct prior alleged misconduct. I think that argument, it not only lacks authority, but it also doesn't recognize the practicalities of who is responsible for a convicted person's continued incarceration and what an officer can do at that point. And I think there's really two issues with that. Once a person is convicted of a crime and sentenced to a term of incarceration, they are held to that incarceration pursuant to court order. So it's not like the officers can just go and free that person and say, oh, well, the Ninth Circuit issued its decision in Lee. We now understand there's a development in the law, and we'd like you to be released from prison. That's a matter for a habeas court to decide whether to vacate that order of conviction and order a sentencing order. I'm just not aware of any case that says that an officer has any type of obligation once new cases are rendered. Thank you. Thank you. Thank you. Thank you, Mr. Counsel, for the arguments. The case is submitted, and we are adjourned for the day.
judges: SCHROEDER, PAEZ, MILLER